## Morrow et ux., Appellants, v. Wilson et al.

*Evidence—Fraud—Silence—Duty to speak — Exchange of real estate—Principal and agent—Trust company.*

1. Silence is a fraud only when there exists a duty to speak.

2. Where an agent deceives and defrauds his principal in an exchange of the principal's suburban real estate for a block of houses in a city, a trust company cannot be held liable as a partici-

pant in the fraud, where it appears that the company took no active part in procuring the agreement of exchange, or participated in the illegal profits made by the agent, and its only connection with the transaction was, first, as insurer of mortgages on the houses and their completion; second, in connection with the creation of a ground rent on the suburban property; third, in connection with the settlements of the various transactions, and that all this was done with knowledge of the plaintiffs, and in the regular course of the company's business.

3. In such a case where there is nothing to show a duty on the part of the officials of the company to make disclosure of the facts coming to their knowledge under previously executed agreements, the mere silence of such officials cannot constitute such fraud as would make the company liable to the persons defrauded.

Argued January 8, 1920. Appeal, No. 67, Jan. T., 1920, by plaintiffs, from judgment of C. P. No. 5, Philadelphia Co., Dec. T., 1918, No. 1833, for defendant, Land Title & Trust Co., in case of Finley C. Morrow and Amy S. Morrow, wife of the said Finley C. Morrow, v. Albert W. Wilson, Walter Preston and the Land Title & Trust Co. Before MOSCHZISKER, FRAZER, WALLING, SIMPSON and KEPHART, JJ. Affirmed.

Trespass for deceit. Before MARTIN, P. J.

Affidavit of defense in nature of demurrer by Land Title & Trust Company to statement of claim.

The court entered judgment for defendant, the Land Title & Trust Co. Plaintiffs appealed.

*Error assigned* was the judgment of the court.

*E. Bartram Richards,* for appellants.—It was the active participation of the Land Title & Trust Company in the fraudulent acts of the other defendants which gave rise to the liability of the title company: Emmons v. Alvord, 177 Mass. 466; Miller v. John, 208 Ill. 173; Wolfe v. Pugh, Admx., 101 Ind. 293; Rogers v. Vicksburg, etc., R. R. Co., 194 Fed. 65.

The Land Title & Trust Company is liable for the acts of its employees which caused loss to the plaintiffs: Santee v. Day et al., 111 Ill. App. 495.

*M. B. Saul,* of *Prichard, Saul, Bayard & Evans,* with him *Joseph Neff Ewing,* for appellee, the Land Title & Trust Co.—The present action is based upon a conspiracy which the statement of claim fails to disclose: Ballatine v. Cummings, 220 Pa. 621; Morrow v. Morrow, 61 Pa. Superior Ct. 208; Newell v. Jenkins, 26 Pa. 159.

The Land Title & Trust Company cannot be charged with the knowledge that Wilson was making secret profit in the transaction.

Assuming knowledge, there was no obligation upon the company to refuse to carry on its usual and customary business of insuring titles: Mead v. Conroe, 113 Pa. 220.

OPINION BY MR. JUSTICE FRAZER, February 23, 1920:

This is an action against defendants, consisting of two individuals and the Land Title & Trust Company, a corporation, to recover loss sustained by plaintiffs in an exchange of properties they were induced to enter into by reason of alleged misrepresentations on the part of Albert W. Wilson, one of the defendants, as to the value of the properties for which plaintiffs' property was exchanged, and by virtue of which misrepresentations, Wilson, acting as plaintiffs' agent, made a large personal profit. The further claim is made that Walter Preston, another defendant, assisted Wilson to finance the deal by furnishing him with money belonging, in fact, to plaintiffs and that the Land Title & Trust Company also participated in the fraud by permitting settlements to be made through its officers without informing plaintiffs they were being defrauded. Wilson and Preston defended on the merits, while the Land Title & Trust Company, by its affidavit of defense, denied that plaintiffs' statement of claim set out a cause of action against

it upon which they could recover judgment. After argument of the question of law raised by the trust company, the court below entered judgment in its favor, without prejudice, however, to the rights of plaintiffs to proceed against the other two defendants. From the judgment so entered plaintiffs have appealed.

The statement of claim sets forth that plaintiffs owned property at Morton, Delaware County, valued at $10,000 and employed Wilson to act as their agent in the exchange of the Morton property for twenty small houses in Germantown, Philadelphia. Wilson represented he could purchase these houses for the sum of $10,000, subject to certain mortgages, and pay for them by an exchange of plaintiffs' Delaware County property. An exchange on the terms indicated being satisfactory to plaintiffs, two agreements of sale were executed, one between plaintiffs and Wilson, as "agent," to convey to him the Morton property for $10,000, clear of encumbrances, and the other between the same parties wherein Wilson, as "agent," agreed to convey to plaintiffs the Germantown houses for $10,000, subject to mortgages aggregating $38,000. It afterwards appeared that Wilson, though acting as plaintiffs' agent, in fact purchased the houses for $5,000, subject to the mortgages referred to, and resold them to plaintiff for $10,000, making a personal profit of $5,000 on the transaction.

The statement also avers Preston participated in the fraud by furnishing Wilson $500 of plaintiffs' money to enable the latter to make the first payment on account of the Germantown houses. Plaintiffs subsequently, in an action against Wilson, recovered judgment against him, but, owing to Wilson's insolvency, was unable to collect the amount of the verdict rendered in their favor. As between plaintiffs and Wilson it is accordingly established that the latter was guilty of fraud and concealment and that he made a personal profit out of the transaction. The only question here involved is whether or not the trust company is liable as a party to the fraud.

For the purpose of connecting the Land Title & Trust Company with the transaction, plaintiffs aver the company "through its duly constituted agents and employees knowingly assisted the said Albert W. Wilson in committing the said fraud." They, however, recognize the principles applied by the court below that the mere failure of the trust company or its employees to disclose the fact that a fraud was being perpetrated gave rise to no action against the company on the part of plaintiffs, unless a legal relation appeared between the company and plaintiffs whereby a duty was imposed upon its employees to inform plaintiffs of the fraud. In other words, silence is a fraud only when there exists a duty to speak. To sustain the averment set out in the statement of claim that the company knowingly assisted in committing the fraud, plaintiffs assert that the legal title to the Germantown houses was in William W. Smith, manager of the company's building operations department, as agent for the company, and for the protection of its policies of insurance issued to holders of first mortgages on the property and guaranteeing the completion of the buildings in process of erection, and that money paid by Wilson in the purchase of the Germantown houses was deposited with the trust company to be used in completion of the houses; that the company assisted Wilson in procuring the money necessary to complete the transaction by placing a ground rent on plaintiffs' Morton property, for which purpose an appraisement of the property was made by an officer of the company; that settlement was made at the company's office and the proceeds paid through it to Wilson and subsequently used by him in the purchase of the Germantown houses, a portion of the amount being paid to Wilson personally; that Smith, who made the appraisement for the company, had knowledge that Wilson was acting as plaintiffs' agent and also possessed information of the existence of the agreements between him and plaintiffs for the exchange of the two properties;

that H. LeRoy Webb, a stenographer in the employ of the company, prepared the agreement between Wilson and the owner of the Germantown houses (the legal title of which was held by Smith, as stated above) and, therefore, had full knowledge that Wilson was purchasing the properties on his individual account; that all settlements relating to the transactions were made at the company's office, at which settlements Wilson acted as agent for plaintiffs with knowledge of the settlement clerk, who, however, at all times, concealed from plaintiffs the fact that Wilson had acted for himself in the transaction while pretending to act for plaintiffs; and that the company received the usual fees for its services rendered in connection with such transactions. Plaintiffs then concluded with the averment that "the said Albert W. Wilson was aided and abetted in the fraud which he committed by the said Walter Preston and the Land Title & Trust Company; that both of said defendants had knowledge that the said Albert W. Wilson was assuming and pretending to act as agent of the plaintiffs, while he was, in fact, acting for himself and that he was defrauding plaintiffs, and thereby became liable to plaintiffs for the loss they have sustained." It will be noticed the statement contains no averment that the Land Title & Trust Company had an active part in procuring the agreements of sale, or participated in the illegal profits made by Wilson. Its only connection with the transaction was in the usual course of its business, first, as insurer of the first mortgages secured on the Germantown properties and of the completion of the houses; second, in connection with the creation of the ground rent on plaintiffs' Morton property; and, third, in connection with the settlements of the various transactions. All this was done with knowledge of plaintiffs and in the regular course of the company's business. The mere fact that the company's employees were aware that Wilson was making a profit did not impose upon them the duty of investigating the transaction, nor was

it conclusive evidence that plaintiffs were being defrauded. Neither the company nor its employees were concerned with the making of the agreement of sale, with the exception of the stenographer, who acted merely as scrivener. No representations of any kind were made by them. Their connection with the matter was merely incidental and in the course of business, and did not make them parties to a fraud which might exist between the persons participating in the transfer. Nothing appears in the statement of claim to show the existence of a relationship between plaintiffs and the company imposing upon the latter's officials a duty to make disclosures of facts coming to their knowledge in the course of settlement under the previously executed agreements. In absence of such duty, their mere silence could not constitute such fraud as would make the trust company liable to the persons defrauded.

The judgment of the court below is affirmed.